```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
 FREDERICK FIGUEREO

                            Plaintiff,

            -against-

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, TEAMSTERS
LOCAL UNION NO. 210, and UNITED
AIRLINES, INC.,

                            Defendants.
----------------------------------------------------------x
```

**MEMORANDUM & ORDER**

1:25-CV-00391 (NRM) (JRC)

**NINA R. MORRISON**, United States District Judge:

Plaintiff Frederick Figuereo brings this action under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, against Defendants International Brotherhood of Teamsters ("IBT"), Teamsters Local Union No. 210 ("Local 210") (IBT and Local 210 referred to collectively as the "Teamsters Defendants"), and United Airlines, Inc. ("United").

In June 2024, Figuereo was terminated from his position as an airline technician with United Airlines after twenty-five years of employment. He secured representation of his union to challenge his termination through the grievance process set forth in the Collective Bargaining Agreement, but, three months later, the union notified Figuereo that it had concluded that his grievance was unlikely to succeed and that it would not pursue it any further on his behalf.

In this lawsuit, Figuereo alleges Defendants are unlawfully preventing him from asserting his statutory right under the RLA to arbitrate his grievance on his

1

own, without union representation. Compl. ¶¶ 29–32, ECF No. 1 (Jan. 22, 2025). Figuereo seeks (1) a declaration that Section 184 of the RLA affords that right and (2) an order compelling arbitration before a System Board of Adjustment ("SBA") composed of a single neutral arbitrator. Compl. ¶ 1.

Defendants have moved to dismiss Figuereo's claims, arguing, *inter alia,* that there is no individual right to arbitrate a claim without union participation under the RLA. Teamsters Mem. of L. in Supp. of Mot. to Dismiss ("Teamsters Mem."), ECF No. 28-1 (July 11, 2025); United Mem. of L. in Supp. of Mot. to Dismiss ("United Mem."), ECF No. 30 (July 11, 2025). Although neither the Supreme Court nor the Second Circuit has yet to decide whether the RLA confers such a right, this Court agrees that Defendants' interpretation of the RLA is likely the correct one. Accordingly, for the reasons discussed below, Defendants' motions to dismiss are GRANTED.

## FACTUAL BACKGROUND

IBT and United are parties to the current and applicable Airline Technicians' Collective Bargaining Agreement (the "CBA") negotiated pursuant to the RLA. Compl. ¶ 13. Local 210 is one of IBT's affiliated local unions. Compl. ¶ 8. Figuereo was employed by United as an Airline Technician for almost twenty-five years. Compl. ¶ 4, 15.

The CBA prohibits discipline of an Airline Technician absent just cause.[1] Compl. ¶ 13; *see also* Gleason Decl., Teamsters Mot. to Dismiss Ex. 3 ("IBT/UAL CBA"), ECF No. 28-2 at 214–15 (setting forth discharge and disciplinary procedure).[2] The CBA also contains a System Board procedure prescribing the Board's composition and process. IBT/UAL CBA at 214–215.

On April 13, 2024, Figueroa attempted to clock out at the end of his shift using his iPad, but the attempt failed. Compl. ¶ 18. He informed his supervisor of the failure, and the supervisor manually entered a 10:30 P.M. clock-out time to correct the technological failure. *Id.* ¶ 19. However, after an investigation, United allegedly discovered that Figuereo exited the parking lot at 9:17 P.M. *Id.* ¶ 20. After further investigation, United allegedly found that, on five different occasions, Figuereo allegedly clocked in before his shift start time and then parked, causing him to be late for his shift. *Id.* United terminated Figuereo on June 11, 2024, on the ground that

---

[1] In support of their motions to dismiss, Defendants submit additional documents, including the CBA, the IBT and Local 210 Constitutions, the signed grievance form authorizing the union to settle his grievance, and the notice of withdrawal of representation from Local 210. *See* Teamsters Mot. to Dismiss Exs. 3–7, ECF No. 28-2; United Mot. to Dismiss Exs. 2–3, ECF Nos. 30-2, 30-3. On a Rule 12(b)(6) motion, the Court may consider only the complaint, documents attached to the complaint or those incorporated by reference, matters of which judicial notice may be taken, and documents relied upon by plaintiff in bringing the suit or which are otherwise "integral" to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Here, the Complaint expressly references the CBA, the grievance form, and the notice of withdrawal; thus, these documents may be considered integral to the complaint for purposes of these Rule 12(b)(6) motions.

[2] Pincites refer to the pagination generated by the Official Court Electronic Document Filing System ("ECF").

3

Figuereo was allegedly "paid for time not worked," allegedly amounting to timecard fraud. *Id.* ¶¶ 17–20.

On June 17, 2024, Teamsters Shop Steward Carlos Rivera filed a grievance on Figuereo's behalf, seeking reinstatement and make-whole relief. *Id.* ¶ 21. The grievance form provided: "I hereby authorize the Union to settle my grievance as they deem proper, and I agree to accept and be bound by the settlement agreed to by the Union or its designees." *Id.* ¶ 22; Gleason Decl., Teamsters Mot. to Dismiss Ex. 4 ("Grievance Form"), ECF No. 28-2 at 380.

On September 10, 2024, Local 210 notified Figuereo of its decision to decline to pursue the grievance. Compl. ¶ 22. According to the notice, the reason for withdrawal of representation was "[the union's] attorney's legal opinion that any grievance interposed on behalf of [Figuereo] will be denied and unlikely to be sustained in a board of arbitration." Gleason Decl., Teamsters Mot. to Dismiss Ex. 5 ("Notice of Union Withdrawal"), ECF No. 28-2 at 382.

On September 30, October 25, and November 12, 2024, Figuereo wrote to United, invoking the CBA and requesting that United process his grievance to the SBA so he may represent himself. Compl. ¶¶ 23–25. Figuereo specifically referenced Article 19.C of the CBA, which establishes the discharge and disciplinary procedure to be followed by union members and employers. *Id.*; IBT/UAL CBA at 214–15. In the November 12 letter, Figuereo stated that, absent a response by November 20, 2024, he would assume United and the Teamsters Defendants were refusing to arbitrate his termination grievance. Compl. ¶ 31.

4

## PROCEDURAL BACKGROUND

On January 22, 2025, Figuereo filed this lawsuit, asserting that, notwithstanding any provisions of the CBA to the contrary, the RLA confers a statutory right to have his termination grievance heard before the SBA without union support.  Compl. ¶ 1.  Figuereo requests arbitration before an SBA consisting of a single neutral arbitrator, "in the interest of justice and basic due process," alleging that United and the Teamsters Defendants' refusal to process the grievance consists of "overt hostility."  *Id.* ¶ 32.  In his Response Brief, however, Figuereo contends that, if the Court declines to order a single neutral arbitrator, it may still compel arbitration under the existing CBA structure in order not to leave Figuereo without a remedy.  Pl. Mem. of Law in Opp'n to Defs. Mots. to Dismiss ("Pl. Opp'n."), ECF No. 29 at 13–14.

On July 11, 2025, Defendants filed fully briefed motions to dismiss based on failure to state a claim under Rule 12(b)(6) (all Defendants) and lack of subject matter jurisdiction under Rule 12(b)(1) (Teamsters Defendants only).  *See* Teamsters Mem. at 1, 20; United Mem. at 5, 8.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim crosses the plausibility threshold when the pleaded facts permit "the court to draw the reasonable inference that the defendant is liable

5

for the misconduct alleged." *Matson v. Bd. Of Educ. Of City School Dist. Of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678 (2009)).  At this stage, courts "must construe [a complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021).

When evaluating a Rule 12(b)(1) challenge to Article III standing, the question is whether the complaint "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Bloomberg Fin. L.P. v. UBS AG*, 358 F. Supp. 3d 261, 277 (S.D.N.Y. 2018) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016)).  To establish standing, the party invoking federal jurisdiction must plausibly allege (1) "an injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) the likelihood that "the injury will be redressed by a favorable decision." *Carter*, 822 F.3d at 55 (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)).  At the pleading stage, the Court must "assess only whether the allegations are sufficient to establish that [the plaintiff's] requested injunctive relief would theoretically redress the alleged denial of [a legal entitlement]." *Soule v. Connecticut Ass'n of Schs., Inc.*, 90 F.4th 34, 48 (2d Cir. 2023). Redressability is satisfied when it is "likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citation omitted).  A plaintiff meets that burden when the relief requested would "eliminate any effects of" the alleged legal violation. *Soule*, 90 F.4th at 47 (citation omitted).

# **DISCUSSION**

Defendants argue that Figuereo's Complaint fails to state a plausible claim because the RLA grants no individual right to compel arbitration under Section 184. *See* Teamsters Mem. at 1; United Mem. at 5. Alternatively, even assuming such a statutory right exists, Defendants contend that Figuereo ceded any such right by authorizing the Union to act unilaterally on his behalf, including by signing a form agreeing that he would "accept and be bound by" any "settlement" of his grievance that the Union might see fit to enter into on his behalf. Teamsters Mem. at 1; United Mem. at 5.

The Teamsters Defendants bring the additional claim that Figuereo lacks Article III standing because his alleged injury is not redressable. Teamsters Mem. at 1–2, 19–20. In their view, the Court cannot grant the relief Figuereo seeks — arbitration before a single neutral arbitrator — because the Court does not have authority to create a new SBA inconsistent with the CBA. *Id.* at 19–20.

For the reasons discussed below, the Court concludes that the RLA does not provide airline employees with a statutory right to compel arbitration before an SBA without union participation. Accordingly, Defendants' motions to dismiss are granted.

## **I. Figuereo Fails to State a Statutory Right to Individual Arbitration**

Figuereo argues that the RLA grants airline employees an individual right to arbitrate disputes classified as "minor" under the RLA before a board of adjustment

7

without union participation.[3] Pl. Opp'n at 7–11. His claim turns on an unsettled (but not entirely novel) question of statutory interpretation — one that has been addressed by several district courts and circuit courts in recent years, although not by the United States Supreme Court or the Second Circuit.

For the reasons explained below, the Court finds that Defendants have the more logical interpretation of the text of the RLA as applied to airline employees like Figuereo. Accordingly, because neither the text of the Act nor any binding precedent supports Figuereo's claim that airline employees have the right to arbitrate such disputes when their union representatives decline to pursue them, the Court agrees with Defendants that no such statutory right exists, and that Figuereo is bound by the limitations on access to arbitration set forth in the parties' CBA.

### a. The Statutory Framework

Congress enacted the RLA in 1926 with the major purpose of providing for "the prompt and orderly settlement of all disputes growing out of grievances" in the railroad labor context. *Pyzynski v. N.Y. Cent. R.R. Co.*, 421 F.2d 854, 857 (2d Cir. 1970) (quoting 45 U.S.C. § 151a). The statutory scheme for dispute resolution in the railroad industry is codified in Title I of the RLA. 45 U.S.C. §§ 151–165. Section 153

---

[3] "The Act contemplates two types of disputes, major and minor, and provides different procedures for handling each." *Rutland Ry. Corp. v. Bhd. of Locomotive Eng'rs*, 307 F.2d 21, 31 (2d Cir. 1962). Minor disputes arise under an existing collective agreement and concern "the meaning or proper application" of its terms, whereas major disputes involve "the formation of collective agreements or efforts to secure them." *Id.* (quoting *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 723 (1945) ("*Elgin I*"), *adhered to on reh'g,* 327 U.S. 661 (1946)). Plaintiff's grievance is a minor dispute because it challenges whether the employer properly applied the CBA's just-cause provision. *See* Compl. ¶ 13.

8

(First) establishes the National Railroad Adjustment Board ("NRAB"), which exercises mandatory jurisdiction over minor disputes, though Section 153 (Second) permits unions and carriers, by agreement, to create special adjustment boards to resolve minor disputes. Thus, railroad employees and employers may arbitrate grievances before the NRAB or before a mutually established SBA.

However, none of these Section 153 provisions applies to the airline industry. Instead, Title II of the RLA, 45 U.S.C. §§ 181–188, governing air carriers, incorporates all of Title I *except* § 153. *See* § 181 ("All of the provisions of [Title I] *except section 153* . . . are extended to and shall cover every common carrier by air . . . ." (emphasis added)). Congress bridged that statutory gap by enacting Section 184, which requires carriers and "[their] employees, acting through their representatives,"[4] to establish contractually created SBAs. 45 U.S.C. § 184. Unlike railroad employees, airline employees thus have no direct statutory access to the NRAB, and their arbitral rights, and attendant procedural rights, arise solely through agreement.

Further, Section 184 provides that a System Board's jurisdiction in the air carrier context may "not exceed[] the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under [Section 153]." 45 U.S.C. § 184. The organic interpretation of this provision is that the NRAB's jurisdiction, as defined in Section 153, is a ceiling, not a floor: it prevents SBAs created pursuant to

---

[4] A "representative" is defined in the statute as a "any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them." 45 U.S.C. § 151 (Sixth).

9

Section 184 from exercising *greater* jurisdiction than NRAB-related tribunals, but it does not automatically supply to airline workers every procedural right available in the railroad context.

Section 185 authorizes the National Mediation Board ("NMB") to establish a National Air Transport Adjustment Board ("NATAB") when "necessary to have a permanent national board of adjustment in order to provide for the prompt and orderly settlement of disputes between said carriers by air [and] their employees." 45 U.S.C. § 185. Yet the NMB has never exercised its discretionary authority to create one. *See Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 917 n.6 (9th Cir. 2018) ("Congress provided for the possibility of a National Air Transport Adjustment Board, but no such body was ever formed." (citation omitted)); *Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 345 (4th Cir. 2010) ("To date, the NATAB has not been established."); *Whitaker v. Am. Airlines, Inc.*, 285 F.3d 940, 944 & n.4 (11th Cir. 2002) ("[T]he National Air Transport Board [] has never been established."). As a result, no statutory national tribunal exists for airline employees, whose only available arbitral forum is a contractually created adjustment board. *See Int'l Ass'n of Machinists v. Cent. Airlines, Inc.*, 372 U.S. 682, 686 (1963) ("Until and unless the [NMB] determined to create a national board, the parties were placed under the statutory duty of establishing and utilizing system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes arising under existing contracts.").

### b. The Individual Right Recognized in *Elgin I* Does Not Extend to Section 184

Figuereo argues that (1) in *Elgin I*, 325 U.S. at 711, the Supreme Court recognized an individual right of employees in the railroad industry to pursue grievances individually, and (2) this right should carry over to the airline context. *See* Pl. Opp'n at 7–9. Figuereo contends that the language in Section 184 ("The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances . . . .") is nearly identical to language in Section 153 (First)(i) ("The disputes between an employee or group of employees and a carrier or carriers growing out of grievances . . . ."), and, since the Supreme Court in *Elgin I* interpreted Section 153 (First)(i) to encompass individual employees, Section 184 must be read the same way. *Id.*

However, *Elgin I* did not rely on Section 153 (First)(i) to establish an individual right to settle grievances. Rather, the Court grounded its holding in Section 152 (Fourth), which preserves an employee's ability to confer individually with management, and — most critically — in Section 153 (First)(j), which expressly affords employees notice and the right to appear "in person, by counsel, or by other representatives." 325 U.S. at 734–36 (citing 45 U.S.C. § 153 (First)(j)). Although Section 152 (Fourth) does apply to air carriers, *Elgin I* expressly cautioned that "[r]ights of conference are not identical with rights of settlement." *Id.* at 735. And Section 153 (First)(j), the provision at the core of *Elgin I*'s reasoning, is explicitly *not* applicable to airlines; as discussed *supra*, Congress excluded all of Section 153 from Title II of the RLA. Because Section 184 contains no comparable language securing

11

an airline industry employee's right to notice, appearance, or representation, extending *Elgin I*'s reasoning to Section 184 would import statutory protections that Congress deliberately omitted.

### c. Persuasive Authority Is Divided and Does Not Override the Statutory Text

Neither the Supreme Court nor the Second Circuit has yet addressed the question of whether Section 184 creates an individual statutory right to arbitrate grievances absent union participation.[5] And the courts outside this Circuit that have thus far addressed this issue have reached divergent conclusions. Courts recognizing a right of individual access under the RLA generally emphasize the danger of leaving employees without a remedy if a union declines to act on their behalf. *See, e.g.*, *Capraro v. UPS*, 993 F.2d 328, 335–36 (3d Cir. 1993) (holding that a collective bargaining agreement may not categorically exclude probationary employees from the grievance process); *Stevens v. Teamsters Local 2707*, 504 F. Supp. 332, 334 (W.D. Wash. 1980) (interpreting Section 184 to permit individual arbitration and observing that, in any event, the applicable CBA in that case contemplated individual settlement of grievances); *Bumpus v. ALPA*, 606 F. Supp. 3d 845, 853–55 (N.D. Ill. 2022) (acknowledging circuit split, but interpreting Section 184 to include an individual right to arbitrate); *Wood v. Int'l Bhd. of Teamsters*, 24-CV-53 (SLG), 2025

---

[5] The Second Circuit has recognized this right as applied to railroad employees but has not addressed the issue in the airline context. *See Schum v. S. Buffalo Ry. Co.*, 496 F.2d 328, 329–30 & n.2 (2d Cir. 1974) (recognizing implicitly the individual right to arbitrate for railroad employees under Section 153, which does not apply to airline employees).

12

WL 2938685, at *2, *4 (D. Alaska Oct. 16, 2025) (reaffirming its holding in an earlier decision on a motion to dismiss, in which the court interpreted *Elgin I* to mean that the RLA does not require individual interests to be submerged in collective processes).

Courts that have dismissed suits by airline employees seeking individual access to arbitration have generally held that Section 184 provides no statutory right to compel arbitration absent union participation, although some have rejected the employees' claims on other grounds. *See Mitchell v. Continental Airlines, Inc.*, 481 F.3d 225, 233–34 (5th Cir. 2007) (holding that employee lacked standing to compel arbitration absent a viable claim for breach of duty of fair representation); *Whitaker v. Am. Airlines, Inc.*, 285 F.3d 940, 945 (11th Cir. 2002) (declining to extend *Elgin I* to Section 184 but deciding the case on other grounds); *Scheffler v. IAM*, 768 F. Supp. 3d 193, 194–5 (D. Mass. 2025) (holding that "there is no individual right to compel arbitration absent union participation under [Section 184]").

The Court has considered the out-of-circuit cases on which Figuereo relies but ultimately reaches a different conclusion. While there are certainly plausible arguments to be made on both sides, this Court is persuaded that interpreting the RLA to confer an individual right to arbitrate upon airline industry employees would take *Elgin I* beyond its statutory foundations in Sections 152 (Fourth) and 153 (First)(j). It is true that the Supreme Court in *Elgin I* stated that a collective agreement cannot "deprive the employees of their individual rights." 325 U.S. at 744. But that statement presupposes the existence of a statutory individual right that the collective agreement could not displace. While the Supreme Court recognized such a

13

right under Title I for railroad employees, its reliance on § 153 — language Congress expressly removed from the air carrier framework — renders that reasoning inapplicable to Title II. In other words, Congress appears to have made a deliberate choice to omit Section 153 from Title II, precluding this Court from extrapolating such rights into Section 184 where Congress has opted to exclude them.

### d. Remedy

Figuereo argues that compelling arbitration is "necessary to preserve the jurisdiction of the grievance process." Compl. ¶ 34 (quoting *BNSF Ry. Co. v. SMART-TD*, 973 F.3d 326, 337 (5th Cir. 2020)). However, under Section 184, system boards established by agreement between employees and carriers have jurisdiction "not exceeding the jurisdiction" of Section 153. 45 U.S.C. § 184. The jurisdiction Figuereo seeks to "preserve" — over claims brought by individuals without union participation — falls outside the authority Section 184 confers on SBAs.

Thus, because the RLA confers no statutory individual right to arbitrate Figuereo's grievance, any right he seeks to enforce must arise from the CBA. The CBA, however, similarly provides no individual right to pursue employees' grievances and instead appears to give the Union exclusive authority to take a grievance to arbitration. *See* IBT/UAL CBA art. 19.C(3) ("If the decision of the Company's representative is not acceptable to the Union, the decision may be appealed *by the Union* to the [SBA.]" (emphasis added)); *id.* art. 19.C(5) ("In the event *the Union* appeals the disciplinary action to arbitration *the Company and the Union* shall attempt to agree on a mutually acceptable impartial arbitrator." (emphasis added));

14

*id.* art. 19.D(1) ("The [SBA] shall be composed of two (2) members designated by the Company and two (2) members designated *by the Union.*" (emphasis added)). These provisions reflect a bargained-for allocation of authority, and nothing in the Complaint alleges that the CBA was negotiated unlawfully, nor that the Teamsters Defendants exercised their authority in an arbitrary or discriminatory manner.

Here, Defendants did not deny Figuereo any right that Congress conferred upon him and his fellow airline employees when enacting the relevant provisions of the RLA. They complied with the Act's requirement to establish an SBA *by agreement*, and no party disputes that such a Board exists under the relevant CBA.

To the extent Figuereo's argument reflects dissatisfaction with the Union's decision to withdraw representation, his remedy is to bring a claim asserting a breach of the duty of fair representation ("DFR"). The Supreme Court has expressly recognized that "an order compelling arbitration should be viewed as one of the available remedies when a breach of the union's duty is proved." *Vaca v. Sipes*, 386 U.S. 171, 196 (1967).[6]

The Second Circuit has found that DFR claims have become "broadly applicable to . . . the settlement of grievances" since the *Elgin* decisions. *Ollman v. Special Bd. of Adjustment No. 1063*, 527 F.3d 239, 249 (2d Cir. 2008) (quoting *Pyzynski,* 421 F.2d at 862). The *Ollman* Court specifically recognized that a DFR

---

[6] Although *Vaca* arose under the Labor Management Relations Act, its reasoning is widely cited in RLA cases. *See, e.g.*, *Bryan v. Am. Airlines, Inc.*, 988 F.3d 68, 76 (1st Cir. 2021); *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608–09 (8th Cir. 2004); *Capraro*, 993 F.2d at 336.

15

claim "'provides a more effective means of protecting the employee against arbitrary abuses of settlement procedures' than assuming that an individual employee can act on her own to settle her grievance and then vacating an award when that assumption proves flawed." *Id.* (quoting *Pyzynski,* 421 F.2d at 862). The Court's decision today does not leave individuals like Figuereo without a remedy, as some courts have asserted. Plaintiffs who allege, as Figuereo does, that a bargaining representative has acted with "overt hostility," Compl. ¶ 32, or other forms of alleged arbitrary, discriminatory or bad faith conduct may pursue a DFR claim to vindicate their rights.

Here, however, Figuereo brings no DFR claim. He proceeds solely on the theory that he possesses an independent statutory right to arbitrate under the RLA. Because, as discussed *supra*, no such right exists under the RLA provisions applicable to air carriers, his claim cannot proceed.

## II. Waiver

In the alternative, Defendants argue that, even assuming *arguendo* that the RLA provided airline employees with a statutory right to arbitrate their grievances, Figuereo waived that right here. They argue that he did so when he specifically delegated authority to the Union by signing a grievance form giving the Union full authority to "settle" the claim on his behalf, as well as through provisions in the IBT and Local 210 Constitutions which give the Union exclusive discretion over the prosecution of their members' grievances. Teamsters Mem. at 17–19; United Mem.

16

at 14–15.[7]  Figuereo argues that neither the form he signed in connection with this particular grievance, nor the constitutions of the unions to which he belongs, constituted a waiver of his right to pursue his own grievances to arbitration.  Pl. Opp'n at 10–11.  He argues that individual rights are statutory and cannot be "lightly abrogated." *Id.* at 11 (quoting *Stevens*, 504 F. Supp. at 335).

Because the Court concludes that no statutory right to arbitrate an individual grievance exists under Section 184, it need not and does not reach Defendants' waiver arguments here.[8]

## **CONCLUSION**

Congress anticipated that circumstances might arise in which it would become "necessary to have a permanent national board of adjustment in order to provide for the prompt and orderly settlement of disputes" in the air-carrier industry.  45 U.S.C. § 185.  Whether the current statutory framework continues to serve that purpose is a question for Congress or the National Mediation Board.  Under existing law,

---

[7] As discussed *supra*, the Court may only consider documents outside the complaint if they are incorporated by reference, or regarding matters of which judicial notice may be taken, or relied upon by plaintiff, or which are otherwise "integral" to the complaint.  *See Chambers*, 282 F.3d at 153.  The IBT and Local 210 Constitutions are neither referenced nor relied upon, and the Court does not deem them necessary to resolve the claims.  Accordingly, the Court treats those Constitutions as "outside the pleadings" and proceeds without considering them.  *See id.*

[8] For the same reason, the Court need not and does not reach the Teamsters Defendants' argument that Figuereo cannot satisfy the redressability requirement of Article III standing because the relief he seeks — arbitration before a "single neutral arbitrator," Compl. at ¶ 1 — is unavailable to him, since the SBA created by the carrier and Union in the CBA is a four-member Board.  *See* Teamsters Mem. at 2, 19.

17

however, this Court lacks authority to create an arbitration process — and an individual union member's right to access it — that the statute does not provide or require.

For the foregoing reasons, the Court finds that the Railway Labor Act does not grant airline employees a statutory right to compel arbitration before a System Board of Adjustment without union participation. Because Section 184 provides no such right, because the CBA does not supply one, and because Figuereo does not allege that his union breached its duty of fair representation, the Complaint fails to state a claim upon which relief may be granted.

Defendants' motions to dismiss are therefore GRANTED.

SO ORDERED.

                                                  */s/ Nina R. Morrison*
                                                  NINA R. MORRISON
                                                  United States District Judge

Dated: December 10, 2025
      Brooklyn, New York